# **<u>EXHIBIT A</u>**

Filed
D.C. Superior Court
03/18/2021 15:58PM
Clerk of the Court

# Superior Court of the District of Columbia

## CIVIL DIVISION- CIVIL ACTIONS BRANCH

### INFORMATION SHEET

Michaela Smith

Case Number: _____ **2021 CA 000959 B**

vs

Date: ___3/18/2021___

Howard
University

☐ One of the defendants is being sued
in their official capacity.

| | |
|---|---|
| Name: *(Please Print)*     Amy Norris     Text | Relationship to Lawsuit |
| Firm Name:     Norris Law | ■ Attorney for Plaintiff |
| Telephone No.:     Six digit Unified Bar No.: <br> 202-830-1225     1017140 | ☐ Self (Pro Se) <br> ☐ Other: _____ |

TYPE OF CASE: ☐ Non-Jury     ■ 6 Person Jury     ☐ 12 Person Jury

Demand: $ ___1017140___     Other: _____

PENDING CASE(S) RELATED TO THE ACTION BEING FILED

Case No.:_____ Judge: _____ Calendar #:_____

Case No.:_____ Judge: _____ Calendar#:_____

---

**NATURE OF SUIT:**     *(Check One Box Only)*

**A. CONTRACTS**            **COLLECTION CASES**

| | | |
|---|---|---|
| ■ 01 Breach of Contract | ☐ 14 Under $25,000 Pltf. Grants Consent | ☐ 16 Under $25,000 Consent Denied |
| ☐ 02 Breach of Warranty | ☐ 17 OVER $25,000 Pltf. Grants Consent | ☐ 18 OVER $25,000 Consent Denied |
| ☐ 06 Negotiable Instrument | ☐ 27 Insurance/Subrogation | ☐ 26 Insurance/Subrogation |
| ☐ 07 Personal Property |     Over $25,000 Pltf. Grants Consent |     Over $25,000 Consent Denied |
| ☐ 13 Employment Discrimination | ☐ 07 Insurance/Subrogation | ☐ 34 Insurance/Subrogation |
| ☐ 15 Special Education Fees |     Under $25,000 Pltf. Grants Consent |     Under $25,000 Consent Denied |
| | ☐ 28 Motion to Confirm Arbitration <br>     Award (Collection Cases Only) | |

**B. PROPERTY TORTS**

| | | |
|---|---|---|
| ☐ 01 Automobile | ☐ 03 Destruction of Private Property | ☐ 05 Trespass |
| ☐ 02 Conversion | ☐ 04 Property Damage | |
| ☐ 07 Shoplifting, D.C. Code § 27-102 (a) | | |

**C. PERSONAL TORTS**

| | | |
|---|---|---|
| ☐ 01 Abuse of Process | ☐ 10 Invasion of Privacy | ☐ 17 Personal Injury- (Not Automobile, <br>     Not Malpractice) |
| ☐ 02 Alienation of Affection | ☐ 11 Libel and Slander | ☐ 18 Wrongful Death (Not Malpractice) |
| ☐ 03 Assault and Battery | ☐ 12 Malicious Interference | ☐ 19 Wrongful Eviction |
| ☐ 04 Automobile- Personal Injury | ☐ 13 Malicious Prosecution | ☐ 20 Friendly Suit |
| ☐ 05 Deceit (Misrepresentation) | ☐ 14 Malpractice Legal | ☐ 21 Asbestos |
| ☐ 06 False Accusation | ☐ 15 Malpractice Medical (Including Wrongful Death) | ☐ 22 Toxic/Mass Torts |
| ☐ 07 False Arrest | ☐ 16 Negligence- (Not Automobile, | ☐ 23 Tobacco |
| ☐ 08 Fraud |     Not Malpractice) | ☐ 24 Lead Paint |

SEE REVERSE SIDE AND CHECK HERE      IF USED

CV-496/June 2015

# Information Sheet, Continued

## C. OTHERS

- ☐ 01 Accounting
- ☐ 02 Att. Before Judgment
- ☐ 05 Ejectment
- ☐ 09 Special Writ/Warrants
  (DC Code § 11-941)
- ☐ 10  Traffic Adjudication
- ☐ 11 Writ of Replevin
- ☐ 12 Enforce Mechanics Lien
- ☐ 16 Declaratory Judgment

- ☐ 17 Merit Personnel Act (OEA)
  (D.C. Code Title 1, Chapter 6)
- ☐ 18 Product Liability

- ☐ 24 Application to Confirm, Modify,
  Vacate Arbitration Award (DC Code § 16-4401)
- ☐ 29 Merit Personnel Act (OHR)
- ☐ 31 Housing Code Regulations
- ☐ 32 Qui Tam
- ☐ 33 Whistleblower

## II.

- ☐ 03 Change of Name
- ☐ 06 Foreign Judgment/Domestic
- ☐ 08 Foreign Judgment/International
- ☐ 13 Correction of Birth Certificate
- ☐ 14 Correction of Marriage
  Certificate
- ☐ 26 Petition for Civil Asset Forfeiture (Vehicle)
- ☐ 27 Petition for Civil Asset Forfeiture (Currency)
- ☐ 28 Petition for Civil Asset Forfeiture (Other)

- ☐ 15 Libel of Information
- ☐ 19 Enter Administrative Order as
  Judgment [ D.C. Code §
  2-1802.03 (h) or 32-151 9 (a)]
- ☐ 20 Master Meter (D.C. Code §
  42-3301, et seq.)

- ☐ 21 Petition for Subpoena
  [Rule 28-I (b)]
- ☐ 22 Release Mechanics Lien
- ☐ 23 Rule 27(a)(1)
  (Perpetuate Testimony)
- ☐ 24 Petition for Structured Settlement
- ☐ 25 Petition for Liquidation

## D.  REAL PROPERTY

- ☐ 09 Real Property-Real Estate
- ☐ 12 Specific Performance
- ☐ 04 Condemnation (Eminent Domain)
- ☐ 10 Mortgage Foreclosure/Judicial Sale
- ☐ 11 Petition for Civil Asset Forfeiture (RP)

- ☐ 08 Quiet Title
- ☐ 25 Liens: Tax / Water Consent Granted
- ☐ 30 Liens: Tax / Water Consent Denied
- ☐ 31 Tax Lien Bid Off Certificate Consent Granted

_____          March 22, 2021
Attorney's Signature                                    Date

## IN THE DISTRICT OF COLUMBIA SUPERIOR COURT

## CIVIL DIVISION

| | | |
|---|---|---|
| **Michaela Smith** | : | |
| 7413 Prestbury Court | : | |
| Shreveport, LA 71129 | : | |
| Plaintiff | : | |
| | : | |
| vs. | : | |
| | : | **2021 CA 000959 B** |
| **Howard University** | : | |
| 2400 6th St. NW | : | |
| Washington, DC 20059 | : | |
| Defendant | : | |

### COMPLAINT

Pursuant to D.C. Superior Court Civil Rule 3, Plaintiff, by and through the undersigned

files this complaint against Defendant for any and all damages stating upon information and belief,

as follows:

### Jurisdiction

Jurisdiction is proper pursuant to D.C. Code §11-921. Personal jurisdiction is proper under

D.C. Code § 13-423(a)(1).

### Parties

1. Ms. Michaela Smith (hereinafter, "Ms. Smith") is a bright and dedicated student from New

   Orleans, LA. Ms. Smith was on track to complete her medical program at Howard University

   in Washington, D.C. prior to a series of mistreatments she endured dating back to January of

   2019.

2. Howard University (hereinafter, "Howard") is a research university with a medical school in

   Washington, DC.

1

**Facts**

3.  Upon information and belief, Ms. Smith was enrolled as a student at Howard College of Medicine (hereinafter "HCOM") in 2019.

4.  Upon information and belief, Ms. Smith enrolled in Structure and Function 2 (hereinafter "S&F II") in the Spring of 2019.

5.  The unit co-coordinators for the class were Dr. Wilson and Dr. Graf.

6.  Dr. Gilland was the lab coordinator and in charge of the Lab for the course, including administering the exams for the lab.

7.  On January 28, 2019, Ms. Smith took a Structure & Function 2 Laboratory Exam (hereinafter the "Lab Exam").

8.  As a result of Ms. Smith's hard work and diligence, she passed the Lab Exam earning a grade of SAT.

9.  Ms. Smith became aware of her passing grade on January 30th, 2019 when she received her test back.

10. In order to enhance her knowledge, Ms. Smith opted to submit four "challenge" responses of the Lab Exam as is a customary practice of students at HCOM.

11. The exam included written instructions for the timeframe in which to submit challenge questions.

12. On February 1, 2019, Ms. Smith approached Dr. Gilland about her challenge responses and asked about the correct way to write them up. She also asked when the "appeal box", where students submit their challenge responses, would become available. This was only her second time submitting challenge responses.

2

13.  Dr. Gilland specifically instructed Ms. Smith to write up the challenge questions how she saw fit and that he would get back to her later. He further instructed that the appeal box would be available sometime the following week.

14. Contrary to the timeframe Dr. Gilland gave Ms. Smith, it is customary at the HCOM for appeal boxes to be available within two days of an exam.

15. Based on Dr. Gilland's expressed instructions, Ms. Smith submitted her challenge questions to the appeal box during the week of February 4, 2019.

16.  Ms. Smith's submitted the challenge questions for her own edification because she knew that even if she was awarded additional points for all four of her challenges, it would not elevate her to the next grade level for the Lab Exam. That is, she could not raise her grade beyond a SAT for the Lab Exam. Thus, she was submitting the challenges at her own option in her sole discretion and without regard to improving her grade for the Lab Exam.

17.  On February 15, 2019, Ms. Smith spoke to Dr. Gilland in the presence of another student. Both Ms. Smith and the other student needed to discuss scheduling a make-up exam with Dr. Gilland (that exam was unrelated to the Lab Exam and ultimately took place on February 21, 2019). Ms. Smith also asked Dr. Gilland about her challenge questions at that time and Dr. Gilland responded with frustration that she would bring up the questions. Dr. Gilland did not, however, say there was any problem with Ms. Smith's challenge questions or that he had any concerns.

18.  Ms. Smith's motivation in submitting the challenge questions was not to improve her grade and Dr. Gilland, the faculty member in charge of the challenge questions, did not tell Ms. Smith there was a problem with her submission.

19. Dr. Gilland raised no concerns with Ms. Smith about the challenge questions when they met more than 10 days after Ms. Smith submitted them.

20. On February 19, 2019, Dr. Wilson wrote to the HCOM's Sr. Associate Dean of Academic Affairs, Dr. Ford, and copied four other HCOM faculty.

21. In the February 19, 2019 letter he expressly and publicly concluded that Ms. Smith had "attempted to cheat on the laboratory examination that was given on January 28, 2019".

22. Dr. Wilson determined Ms. Smith's guilt based on his perception and his sole interpretation, and then shared his conclusion with HCOM faculty.

23. Dr. Wilson, however, was not the proctor of the Lab Exam and did not oversee the challenge questions. Moreover, Dr. Gilland, the actual faculty in charge of the Lab Exam, did not sign this letter.

24. On February 26, Ms. Smith met with Dr. Ford, and told Dr. Ford that she had not attempted to cheat. At this point, Ms. Smith did not even know who had accused her of attempting to cheat, and Dr. Ford avoided sharing this information.

25. That, notwithstanding, Dr. Ford assigned Ms. Smith a grade of zero for the Lab Exam and told Ms. Smith that she would have to go before the Honor Council Committee (hereinafter "HCC").

26. Dr. Ford based this significant punishment of Ms. Smith on her own conclusion of Ms. Smith's guilt.

27. It is unclear on what authority, if any, Dr. Ford was acting to assign a grade of zero.

28. Dr. Ford was not the proctor of the Lab Exam and did not oversee the challenge questions. Nor was she a unit coordinator for S&F II.

29.  Dr. Ford took it upon herself to investigate the allegation, determine innocence or guilt, and determine and implement sanctions. These actions were in derogation of HCOM policies.

30.  In written correspondence dated March 11, 2019 (well over 30 days after Ms. Smith submitted the challenge questions and 13 days after Dr. Ford met with Ms. Smith), Dr. Ford sent a message to Dr. Callender, Chair of the Honor Council Committee, and copied Diane Thomas (Dean Mighty's secretary). In the correspondence, Dr. Ford conclusively and erroneously stated that Ms. Smith "manipulated the answer key" to an exam.

31.  The correspondence states this as a matter of fact and that it was conclusive evidence of Ms. Smith's academic dishonesty. As a result, Dr. Ford, a HCOM Sr. Associate Dean, told the Chair of the HCC (the body that HCOM entrusts with the official obligation to determine the innocence or guilt of its students) that Ms. Smith was guilty of academic dishonesty.

32.  Dr. Ford concluded Ms. Smith's guilt before she had a chance to appear before the honor counsel. As such, Dr. Ford effectively circumvented the Honor Council Committee (hereinafter "HCC") in direct derogation of Howard policies as well as of general principles of fairness in education.

33.  Specifically, there is no explanation as to why Dr. Ford was first raising her concerns to the HCC well over 30 days after Ms. Smith submitted her challenge questions. This delay violates the manual, because according to the HCOM manual, "if an individual . . . believes that a violation of the Code has occurred, that individual **must** report the violation as soon as possible to the Chair of the Council. Failure to report the violation will itself constitute a violation of the Code, with possible charges according to the applicable policies." *HCOM Manua*l, 35. It appears that no one reported the violation to the Chair of the Council until over 30 days after the alleged "manipulation of the answer key". The issue is really in the

way that Michaela wrote up her challenge question response, and an alleged "manipulation of the answer key" is not only a false allegation, but also an allegation that was reported after significant time had passed, which is in violation of Howard policies.

34.  In a letter dated March 25, 2019 (almost two months after Ms. Smith submitted her challenge questions), Dr. Callender wrote to Ms. Smith stating that the HCC had received a complaint against Ms. Smith, and a formal HCC hearing was necessary to fairly adjudicate the allegation. Drs. Mighty and Ford were copied.

35.  The hearing was scheduled for April 1, 2019 which was subsequently changed to April 16, 2019.

36.  There is no explanation as to why Dr. Ford failed to contact the HCC until 13 days after she first raised the concern with Ms. Smith.

37.  There is no explanation as to why the HCC did not contact Ms. Smith until 14 days after Dr. Ford notified the HCC of her belief that a hearing was needed for Ms. Smith.

38.  The delay in the hearing violates Howard's procedures, as according to the HCOM manual, the hearing must take place "within twenty-one working days (excluding weekends)" after the accusation is reported to the council. The allegations were reported on March 11th, and the hearing did not occur until April 16th, 2019. The hearing should have taken place by April 9th, 2019.

39.  The delay in the hearing is significant, as was over ten weeks after the alleged "cheating" had occurred.

40.  Ms. Smith made repeated inquiries about the charges brought against her, but that information was not provided until April 15, 2019, the day before the hearing.

41. Diane Thomas (hereinafter "Ms. Thomas") was appointed as Ms. Smith's point of contact for information about the HCC hearing. However, Ms. Thomas did not have working knowledge of the HCC or the charges against Ms. Smith and repeatedly told Ms. Smith she did not have the answers to the questions Ms. Smith asked.

42. Ms. Smith finally was able to speak with Dr. Callender on April 15, 2019 and he conveyed to Ms. Smith over the phone that her requests for information about the HCC hearing and related charges should have been answered well before the hearing and not just one day prior.

43. According to the *HCOM Policies and Procedure Manual* (2018-2019 Edition), before a HCC Hearing, "the accused student will be notified by the Secretary of the Council in writing of the date, time, and place of the Hearing; the nature of the violation with which the student is charged; the evidence of the investigation, including the name of the individual making the initial allegation, and of the opportunity to select an advisor." *HCOM Manual* at 36.

44. Ms. Smith never received any "evidence of the investigation", as required by the HCOM manual. See *HCOM Manual* at 36. This is in direct violation of the *HCOM*'s policies and practices. See *HCOM Manual* at 36.

45. Nor did Ms. Smith receive any information regarding the name of the individual making the initial allegation. This is in direct violation of the *HCOM*'s policies and practices. See *HCOM Manual* at 36.

46. Ms. Smith was not given the opportunity to select an advisor or consult a lawyer, as she did not have time to select an advisor or consult a lawyer, as she only received the charges against her one day before the hearing.

47. Ms. Smith's lack of opportunity to select an advisor is in direct violation of the *HCOM*'s policies and practices. See *HCOM Manual* at 36.

7

48. Specifically, the manual states that "[t]he student and advisor are empowered to review and gather evidence prior to the hearing." *HCOM Manual*, 36. Ms. Smith was never afforded that opportunity as she only received the charges against her one day before the hearing.

49. The lack of time to gather evidence and formulate a defense is significant, as it essentially violated Ms. Smith's access to a fair and impartial hearing to the extent that it was as if a hearing had not occurred.

50. As a result of the HCOM's failures to provide Ms. Smith with information about the HCC hearing, Ms. Smith could not properly prepare for the HCC hearing. Moreover, Dr. Wilson had already assigned guilt. And, Dr. Ford not only assigned guilt, but also erroneously conveyed her conclusion that Ms. Smith "manipulated the answer key" to the chair of the HCC. These comments demonstrate ill-will on behalf of Dr. Ford.

51. Ms. Smith never "manipulated the answer key" as Dr. Ford describes.

52. Therefore, Dr. Wilson's letter to the HCC assigning guilt was factually inaccurate.

53. Glaringly, Dr. Gilland was not at the HCC hearing. Therefore, Ms. Smith was not able to provide the HCC with the testimony of the faculty member in charge of the Lab Exam and challenge questions. Nor was she able to present Dr. Gilland's testimony about his instruction to write up the challenge questions as she saw fit.

54. The HCC itself was not properly constituted in that it did not have a quorum of fellow students on the panel. This is in violation of Howard Medical School's policies.

55. The *HCOM Manual* states, "For each hearing, at least six members of the Council *must* be present: two student members and four faculty members, this includes the Council Chair, who will conduct the hearing, but who may only vote in case of the need to break a tie." *HCOM Manual*, 36.

8

56.  Upon information and belief, the only student present was Philise Williams, who was the
and Vice-Chair of the Honor Council and not a "student member".

57.  Ms. Williams was not a replacement student member standing in, because she was not
selected by the Dean prior to the April 16 hearing as a "student member"; Ms. Williams' title
was "Vice-Chair". The student members authorized to participate in Honor Council hearings
were 4th-year student (Gabe Felix) or alternate (Karima Holmes), and neither was present at
Plaintiff's hearing.

58.  The lack of the correct compensation of the adjudicative body is in violation of Howard's
practices and policies, as clearly stated in the *HCOM Manual*.

59.  Throughout this opaque and haphazard process, Ms. Smith continued on her course of study
and continued to pay tuition to Howard.

60.  The allegation of misconduct created additional pressure on Ms. Smith while she was trying
to meet the challenges of medical study; the poor handling of the allegation by the HCOM
heightened this pressure.

61.  In addition, Howard violated the HCOM Manual by not issuing an "early warning report".
See *HCOM Manual*, 31. The allegations against Michaela here appear to be concerned with
the way that Michaela wrote up one challenge response out of four. She made a mistake in
the form of her allowed response. She was not intending to cheat. An early warning is a more
appropriate response to Michaela's write up for the challenge response; as an early warning
was not given, it deviates from Howard's policies and practices.

62.  On May 17, 2019, Dr. Ford emailed Ms. Smith to inform her she assigned her a grade of
zero for the Lab Exam. (Dr. Ford had already stated this to Ms. Smith when they met on
February 26, 2019.)

63. Dr. Ford said the zero reduced Ms. Smith's overall course grade to a 68.45%.

64. As a result of Dr. Ford's reduction, Ms. Smith's overall grade in the course went from SAT (70% and over) to UNSAT.

65. This information came over three months after the Lab Exam and without any issuance of guilt by the HCC.

66. On May 21, Ms. Smith met with Dr. Ford about her academic file. Ostensibly, the meeting was to address her grades and whether Ms. Smith would be promoted. Dr. Ford told Ms. Smith during a meeting between the two that Dr. Ford, along with Dr. Wilson and Ms. Monique Frazier (a grade data analyzer for the HCOM), had each calculated Ms. Smith's grade, and that each of them had arrived at a 68.45%.

67. Dr. Ford told Ms. Smith that she should meet with Dr. Wilson and request that Dr. Wilson raise Ms. Smith's grades by 1.55%, so that Ms. Smith could meet the promotion requirement.

68. Notwithstanding Dr. Wilson's calculations and Ms. Smith's ardent efforts to have HCOM properly calculate her grade, Dr. Ford gave an unfavorable decision to Ms. Smith in a letter dated May 23, 2019, just two days after she met with Dr. Ford in person. Again, this extreme consequence came prior to any assignment of guilt by the HCC and in contradiction to Dr. Wilson's calculation of Ms. Smith's grade.

69. Ms. Smith subsequently met with Dr. Wilson who calculated Ms. Smith's grade as a 74% because, in Dr. Wilson's calculation (and he was the unit co-coordinator), he did not assign a grade of zero for the Lab Exam. Instead, in Dr. Wilson's calculation, he kept Ms. Smith's earned 78% for the Lab Exam intact.

70. Ms. Smith filed a timely letter of appeal to the Committee on Promotions and Graduations (hereinafter "P&G Committee") decision, hand-delivered directly to the office of Dr. Mighty,

Dean of the HCOM, on May 28. To date, Ms. Smith has not received a response to that letter of appeal.

71.  On June 3, Ms. Smith met with Dean Mighty regarding what his office characterized as a meeting regarding "Honor Council Matters". Given the purported context of the meeting, Ms. Smith asked Dean Mighty for the disposition of the HCC hearing. Dean Mighty did not provide that information to Ms. Smith. Dean Mighty's refusal or inability to provide Ms. Smith with the disposition in that meeting was more than 45 days after the HCC hearing, more than 75 days after Dr. Ford e-mailed Dr. Callender initiating the HCC hearing, and more than 100 days after Dr. Wilson wrote to Dr. Ford regarding Ms. Smith's challenge questions.

72.  In the June 3, 2019 meeting, Ms. Smith also asked Dean Mighty to address her appeal of the P&G Committee decision, but he did not address that with Ms. Smith either.

73.  On June 5, 2019, Ms. Smith sent correspondence to the HCOM's administrative office asking about why she had not been given a verdict for the HCC hearing. She also inquired about receiving a hearing or oral argument in regard to the appeal to the P&G committee with respect to all that had transpired regarding the Lab Exam and the handling of the allegation against her. The manual implies that a hearing will take place for the appeal to the P&G committee, when it states that "attorneys are not permitted in the room during the hearing or deliberation". *Id* at 71. Additionally, Ms. Smith asked about the status of her appeal, which according to Howard's Policy and Procedures Manual, should have been submitted to the Student Grievance committee. Ms. Smith did not receive a response to that correspondence.

74.  The failure to allow a student's P&G Appeal to be heard by the Student Grievance
committee is a failure to comply with Howard Medical School's usual practices and
published policies. The *HCOM Manual* allows students to "appeal any decision made by the
Committee on Student Promotions and Graduation, such as dismissal or requirement to
repeat an academic year." *Id.* at 71. The policy states that after a student makes an appeal,
"The Dean will consign the student's appeal to the College of Medicine's Student Grievance
Committee. The formal process as outlined in the University-wide 'Student Grievance
Procedures' will be followed…. Committee's decision will be sent to the Dean of the College
of Medicine in the form of a recommendation…. The Dean will inform the student in writing
of the decision, which may be based upon the Committee's recommendation or upon a
modification of it…. The decision of the Dean is final." *Id.* at 71-72.

75.  Here, Ms. Smith correctly filed a timely letter of appeal. To date, Ms. Smith has not received
a response to that letter of appeal. She has never been contacted by the Student Grievance
Committee.

76.  It seems the appeal was never passed on to the Student Grievance Committee, and her
appeal was never considered under the formal procedure.

77.  HCOM's failure to conduct a P&G Appeal was clearly a violation of and a failure to comply
with HCOM's usual practice and published policies.

78.  Subsequently, Ms. Smith has learned that a male student, Emmanuel Oladipupo, was
brought before the same Spring/ Summer 2019 P&G committee. Upon information and
belief, Mr. Oladipupo originally received a negative disposition from the P&G committee, he
submitted an appeal, the P&G committee considered his appeal in a timely fashion, on appeal
the P&G committee disposed of the issue in his favor, and he was able to progress as a

medical student. Upon information and belief, Ms. Smith was denied access to an appeal due to gender bias and discrimination as a male student was treated differently than her.

79. On June 17, 2019, Ms. Smith sent further correspondence to Howard requesting information and a fair and timely appeal process to address the numerous mistreatments she endured. Ms. Smith has not received a response addressing these matters, nor has an appeal been granted. As a devoted student, Ms. Smith was pleading for help to pursue her medical degree candidacy, as she had been working and paying for the right to do so for many years.

80. Only after the June 17, 2019 correspondence, Ms. Smith received a letter dated June 12, 2019 from Dean Mighty to Ms. Smith (almost 60 days after the HCC hearing and more than 4 months after Ms. Smith submitted the challenge questions). Dean Mighty wrote that the letter was to inform Ms. Smith that the Honors Council recommended expulsion. In the letter, Dr. Mighty referred to an accusation against Ms. Smith. As noted above, however, there was never an accusation against Ms. Smith, rather only an assignment of guilt by both Dr. Wilson and Dr. Ford. Furthermore, this letter from Dean Mighty refers to the HCC's decision, but the HCOM has never provided Ms. Smith with the actual disposition of her hearing directly from the HCC.

81. On July 14, 2019, Ms. Smith sent a formal complaint against both Drs. Mighty & Ford to the Office of the Provost, reporting their actions in thwarting her access to an appeal and circumventing HCOM Policy. This was submitted correctly and in a timely fashion, as provided for in the HCOM Manual. *HCOM Manual*, page 28.

82. Dr. Wutoh, the Provost and Chief Academic Officer of Howard responded to Ms. Smith in a letter dated July 26, 2019, but did not address the important issues Ms. Smith raised in her repeated requests for redress for the mistreatment she had endured at the hands of Howard.

83.  As outlined above, Ms. Smith had significant cause to file complaints against Dr. Ford and Dean Mighty for their mistreatment of her and their failure to ensure Ms. Smith was provided with the institutional guarantees that Howard and the HCOM promise their students.

84.  However, Dr. Wutoh, as Provost and Chief Academic Officer, specifically informed Ms. Smith in writing that he would not address her specific complaints. Further, Dr. Wutoh declared in the letter that the process was "appropriate".

85.  Upon information and belief, Dr. Wutoh failed to make a good faith or rational investigation into Ms. Smith's complaint, as required by HCOM Policy. *HCOM Manual*, page 28. Ms. Smith exhausted all administrative remedy before seeking redress before this Honorable Court.

86.  It was factually incorrect for Dr. Ford to state that Ms. Smith had "manipulated the answer key". Yet, Dr. Ford never saw any repercussions for that. It is not logical to dismiss a student for writing up a challenge response in an unapproved manner. Ms. Smith never had the intention to cheat, and she tried to receive confirmation from her lab instructor that her response was written up correctly. To dismiss a student for the way that she wrote up a challenge response is not only unfair, it is illogical. There was no rational basis to dismiss Ms. Smith from medical school.

## COUNT I

## BREACH OF CONTRACT

87.  Paragraphs 1-85 are herein incorporated by reference.

88.  It is well-established in the District that a relationship between a university and its student is a contractual agreement. The Offer of Acceptance issued by Defendant Howard University to

Plaintiff Smith on May 2, 2017 and signed and confirmed by Howard on June 7, 2017 evidenced the beginning of a contractual agreement with mutually binding promises, obligations, and responsibilities established by and between Defendant and Plaintiff. Such Agreement was supplemented in turn by a reasonably promulgated set of rules, regulations, and policies implemented by the Defendant and relied upon by Plaintiff. Plaintiff in this proceeding complied in every reasonable manner with every provision of this Agreement, including making in a timely manner all required payments and obligations.

89. The actions of Defendant Howard University, through its senior officers, employees and agents, have caused the contract between Plaintiff and Defendant to be breached, as Defendant unilaterally and without just reason rescinded the contract to provide educational services to Plaintiff though its arbitrary and capricious dismissal of Plaintiff.

90.  The breach of contract by Defendant caused the following damages and injuries to Plaintiff Smith:

    a.  The denial of Defendant of the rightful and timely graduation of Plaintiff from Howard Medical School, scheduled for May 2022, has resulted in significant financial loss to Plaintiff resulting in the denial of future income as a practicing medical resident and as a fully licensed medical doctor corresponding to the first four years of her career, in the amount of not less than $565,000.

    b.  The unlawful and premature dismissal of Plaintiff from the Howard Medical School by Defendant resulted in the loss of all investment costs of such education, including education costs, living expenses and deferred or missed

      income from alternative employment during the period of July 2017 through

      July 2019, in an amount of not less than $180,000.

    c.   The failure of the Defendant to comply with its contract to graduate and

      present Plaintiff with a medical degree upon successful completion of medical

      school denied the Plaintiff of a material asset worth no less than $745,000.

90. As a result of Defendant's conduct in breaching its contract with Plaintiff, Plaintiff Smith

demands the relief set below:

    d.   Payment of an amount not less than $745,000 for monetary compensation for

      lost investment costs and loss of future income, plus appropriate interest on

      past lost investment costs;

    e.   Immediate reinstatement to Howard University Medical School with an

      opportunity to complete all remaining degree requirements;

    f.   Removal of all references to Plaintiff's dismissal from medical school from all

      records and documents maintained by the Defendant;

    g.   The provision of a letter of clearance allowing Plaintiff to attend another

      medical school program;

    h.   The correction of Plaintiff's course grade for S+F II to the mark "Sat";

    i.   The provision of favorable recommendations by Defendant to locations at

      which Plaintiff can perform intern and residency requirements following

      medical school graduation;

    j.   Payment of all reasonable attorney's fees and costs associated with this

      litigation.

    k.   Award Plaintiff pre-judgement interest and post-judgement interest.

l.  Such other relief as this Honorable Court may direct.

## Count II

## DISCRIMINATION IN VIOLATION OF TITLE IX OF THE EDUCATION

## AMENDMENTS OF 1972

91.  Paragraphs 1-90 are herein incorporated by reference.

92.  Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681(a), states that

"no person in the United States shall, on the basis of sex, be excluded from participation in,

be denied the benefit of, or be subjected to discrimination under any education program or

activity receiving Federal financial assistance. . . ."

93.  Here, Ms. Smith was denied the benefit of an appeal. The same Spring/ Summer 2019 P&G

committee which refused to acknowledge and consider Plaintiff's appeal, took timely action

to consider a male student's appeal and ultimately disposed of the issue in his favor. Dean

Mighty refused Ms. Smith's multiple attempts to discuss with him her request for an appeal,

while he facilitated the male student receiving an appeal. A male student was in

circumstances sufficiently similar to Plaintiff's and was treated more favorably by

Defendant.

94.  Defendant's refusal to acknowledge and consider Plaintiff's appeal was an act of selective

enforcement affected by Ms. Smith's gender. This affected the severity of the penalty to Ms.

Smith; taking away her access to an appeal was itself a penalty impacted by gender bias, and

it led to her being denied progression, a penalty she may have avoided had she been allowed

an appeal. Sex was a motivating factor in Howard University's decision to discipline its

student, Plaintiff.

95.  Howard University receives federal funding, and as such Howard University must abide by Title IX, which they failed to do, as they failed to consider Ms. Smith's appeal but considered the appeal of a male student.

96.  As a direct and proximate result of Howard University's unlawful acts, Plaintiff was denied or limited in her ability to participate or benefit from the school's educational programs or activities on the basis of sex.

97.  As a direct and proximate result of Howard University's unlawful acts, Plaintiff suffered and continues to suffer lost earnings, employment and educational benefits, emotional pain, suffering, personal embarrassment, humiliation, and loss of enjoyment.

98.  As a result of Defendant's discriminatory conduct in violation of Title IX of the Education Amendments of 1972, Plaintiff Smith demands the relief set below:

    a.  Award Plaintiff compensatory and punitive damages;

    b.  Immediate reinstatement of Plaintiff to Howard University Medical School with an opportunity to complete all remaining degree requirements;

    c.  Removal of all references to Plaintiff's dismissal from medical school from all records and documents maintained by the Defendant;

    d.  The provision of favorable recommendations by Defendant to locations at which Plaintiff can perform intern and residency requirements following medical school graduation;

    e.  Payment of all reasonable attorney's fees and costs associated with this litigation;

    f.  Award Plaintiff pre-judgement interest and post-judgement interest;

g.   Declare Defendant's conduct in violation of Title IX of the Education

Amendments of 1972, 20 U.S.C. § 1681; and

h.   Such other relief as this Honorable Court may direct.

Respectfully submitted,

By: /s/ *Amy E. Norris, Esq.,* (#1017140)

By: /s/ *Anna L. Nathanson, Esq.,* (#1737999)
Amy@mwlc.org
Anna@norrislawgroup.org
(202) 530-0100
NORRIS LAW, PLLC
616 E Street N.W.
Suite 1156
Washington, DC 20004

Attorneys for Michaela Smith

# JURY DEMAND

Plaintiff demands a trial by jury for all issues triable as such.


Respectfully submitted,

By: /s/ *Amy E. Norris, Esq.,* (#1017140)

By: /s/ *Anna L. Nathanson, Esq.,* (#1737999)
Amy@mwlc.org
Anna@norrislawgroup.org
(202) 530-0100
NORRIS LAW, PLLC
616 E Street N.W.
Suite 1156
Washington, DC 20004


Attorneys for Michaela Smith

Superior Court of the District of Columbia
**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

Michaela Smith
_____
                                    Plaintiff

vs.                                                         Case Number   **2021 CA 000959 B**

Howard University
_____
                                    Defendant

**SUMMONS**

To the above named Defendant:

> You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

> You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Amy Norris
_____
Name of Plaintiff's Attorney
616 E Street N.W., Suite 1156
_____
Address
Washington, D.C. 20004
_____
(202) 830-1225
_____
Telephone

_Clerk of the Court_

By _____
                                    Deputy Clerk

Date   **03/26/2021**

如需翻译,请打电话 (202) 879-4828     Veuillez appeler au (202) 879-4828 pour une traduction     Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202) 879-4828로 전화주십시요.     ያማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

CV-3110 [Rev. June 2017]                                                                 Super. Ct. Civ. R. 4





### TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA
### DIVISIÓN CIVIL
#### Sección de Acciones Civiles
**500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001**
**Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov**

Michaela Smith
_____
                          Demandante

        contra                                          Número de Caso: ...............................

Howard University
_____
                          Demandado

### CITATORIO

Al susodicho Demandado:

    Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

    A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

Amy Norris
_____                    *SECRETARIO DEL TRIBUNAL*
Nombre del abogado del Demandante

616 E Street N.W., Suite 1156
_____        Por: _____
Dirección                                                      Subsecretario
Washington, D.C. 20004
_____

(202) 830-1225
_____        Fecha _____
Teléfono

如需翻译, 请打电话 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bài dịch, hãy gọi (202) 879-4828

한국어로 번역을 원하시면 (202) 879-4828 로 전화 하십시요.     የአማርኛ ትርጉም ከፈለጉ (202) 879-4828 ይደውሉ

    IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO.*

    Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

CV-3110 [Rev. June 2017]                                                      Super. Ct. Civ. R. 4



**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001**
**Telephone: (202) 879-1133 • Website: www.dccourts.gov**

MICHAELA SMITH
    Vs.                                                    C.A. No.          2021 CA 000959 B
HOWARD UNIVERSITY

## INITIAL ORDER AND ADDENDUM

    Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("Super. Ct. Civ. R.") 40-I, it is hereby **ORDERED** as follows:

    (1) This case is assigned to the judge and calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption.

    (2) Within 60 days of the filing of the complaint, plaintiff must file proof of service on each defendant of copies of (a) the summons, (b) the complaint, and (c) this Initial Order and Addendum.  The court will dismiss the claims against any defendant for whom such proof of service has not been filed by this deadline, unless the court extended the time for service under Rule 4(m).

    (3) Within 21 days of service (unless otherwise provided in Rule 12), each defendant must respond to the complaint by filing an answer or other responsive pleading. The court may enter a default and a default judgment against any defendant who does not meet this deadline, unless the court extended the deadline under Rule 55(a).

    (4) At the time stated below, all counsel and unrepresented parties shall participate in a remote hearing to establish a schedule and discuss the possibilities of settlement. Counsel shall discuss with their clients **before** the hearing whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this hearing.**

    (5) If the date or time is inconvenient for any party or counsel, the Civil Actions Branch may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. To reschedule the hearing, a party or lawyer may call the Branch at (202) 879-1133.  Any such request must be made at least seven business days before the scheduled date.

No other continuance of the conference will be granted except upon motion for good cause shown.

    (6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each judge's Supplement to the General Order and the General Mediation Order.  Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

                                     Chief Judge Anita M. Josey-Herring

Case Assigned to: Judge ROBERT R RIGSBY
Date:    March 26, 2021
Initial Conference: **REMOTE HEARING - DO NOT COME TO COURTHOUSE**
**SEE REMOTE HEARING INSTRUCTIONS ATTACHED TO INITIAL ORDER**

10:00 am, Friday, June 25, 2021
Location:   Courtroom 320
             500 Indiana Avenue N.W.
             WASHINGTON, DC  20001

## ADDENDUM TO INITIAL ORDER AFFECTING
## ALL MEDICAL MALPRACTICE CASES

D.C. Code § 16-2821, which part of the Medical Malpractice Proceedings Act of 2006, provides,   "[a]fter action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ('ISSC'"), prior to any further litigation in an effort to reach a settlement agreement.  The early mediation schedule shall be included in the Scheduling Order following the ISSC.  Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC."

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www.dccourts.gov/pa/.   To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. D.C. Code § 16-2825 Two separate Early Mediation Forms are available.  Both forms may be obtained at www.dccourts.gov/medmalmediation.  One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov.  Unrepresented plaintiffs who elect not to eFile must either mail the form to the Multi-Door Dispute Resolution Office at, Suite 2900, 410 E Street, N.W., Washington, DC 20001, or deliver if in person if the Office is open for in-person visits.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles.  All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation.  D.C. Code § 16-2823(a).  If the parties cannot agree on a mediator, the Court will appoint one.  D.C. Code § 16-2823(b).

The following people are required by D.C. Code § 16-2824 to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code§ 16-2826.  Any Plaintiff who is unrepresented may mail the form to the Civil Actions Branch at [address] or deliver it in person if the Branch is open for in-person visits. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief Judge Anita M. Josey-Herring

**Civil Remote Hearing Instructions for Participants**

The following instructions are for participants who are scheduled to have cases heard before a Civil Judge in a **Remote Courtroom**

**Option1:** (AUDIO ONLY/Dial-in by Phone):

Toll 1 (844) 992-4762 or (202) 860-2110, enter the Meeting ID from the attachment followed by #, press again to enter session.

- *Please call in no sooner than 5 minutes before your scheduled hearing time. Once you have joined the session, please place your phone on mute until directed otherwise.  If you should happen to get disconnected from the call, please call back in using the phone number and access number provided and the courtroom clerk will mute your call until the appropriate time.*

If you select **Option 2** or **Option 3** use the **Audio Alternative**

**Option 2:** (LAPTOP/ DESKTOP USERS 1):

Open Web Browser in Google Chrome and copy and paste following address from the next page:
https://dccourts.webex.com/meet/XXXXXXXXX

**Option 3:** (LAPTOP/ DESKTOP USERS 2):

Open Web Browser in Google Chrome and copy and paste following address
https://dccourts.webex.com   Select **Join**, enter the Meeting ID from the next page

**AUDIO ALTERNATIVE**:  Instead of automatically using **USE COMPUTER FOR AUDIO**, select **CALL-IN** and follow the **CALL-IN** prompt window.  Use a cell phone or desk phone. You will be heard clearer if you **do not** place your phone on SPEAKER. It is very important that you enter the **ACCESS ID #** so that your audio is matched with your video.



**Option 4:** (Ipad/SMART PHONE/TABLET):

- Go to App Store, Download WebEx App (Cisco WebEx Meetings)
- Sign into the App with your Name and Email Address
- Select Join Meeting
- Enter address from the next page: https://dccourts.webex.com/meet/XXXXXXXXX
- Click join and make sure your microphone is muted and your video is unmuted (if you need to be
- seen). If you only need to speak and do not need to be seen, use the audio only option.
- When you are ready click "Join Meeting". If the host has not yet started the meeting, you will be placed in the lobby until the meeting begins.

**For Technical Questions or issues Call: (202) 879-1928, Option #2**

Superior Court of the District of Columbia
Public Access for Remote Court Hearings
(Effective August 24, 2020)

**The current telephone numbers for all remote hearings are: 202-860-2110 (local) or 844-992-4726 (toll free).** After dialing the number, enter the WebEx Meeting ID as shown below for the courtroom. Please click a WebEx Direct URL link below to join the hearing online.

Audio and video recording; taking pictures of remote hearings; and sharing the live or recorded remote hearing by rebroadcasting, live-streaming or otherwise are not allowed

| Division | Courtroom | Types of Hearings Scheduled in Courtroom | Public Access via WebEx | |
|---|---|---|---|---|
| | | | WebEx Direct URL | WebEx Meeting ID |
| Auditor Master | 206 | Auditor Master Hearings | https://dccourts.webex.com/meet/ctbaudmaster | 129 648 5606 |
| Civil | 100 | Civil 2 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb100 | 129 846 4145 |
| | 205 | Foreclosure Matters | https://dccourts.webex.com/meet/ctb205 | 129 814 7399 |
| | 212 | Civil 2 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb212 | 129 440 9070 |
| | 214 | Title 47 Tax Liens; and Foreclosure Hearings | https://dccourts.webex.com/meet/ctb214 | 129 942 2620 |
| | 219 | Civil 2 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb219 | 129 315 2924 |
| | 221 | Civil 1 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb221 | 129 493 5162 |
| | 318 | Civil 2 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb318 | 129 801 7169 |
| | 320 | | https://dccourts.webex.com/meet/ctb320 | 129 226 9879 |

4

| | 400 | Judge in Chambers Matters including Temporary Restraining Orders, Preliminary Injunctions and Name Changes | https://dccourts.webex.com/meet/ctb400 | 129 339 7379 |
|---|---|---|---|---|
| | 415 | Civil 2 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb415 | 129 314 3475 |
| | 516 | | https://dccourts.webex.com/meet/ctb516 | 129 776 4396 |
| | 517 | | https://dccourts.webex.com/meet/ctb517 | 129 911 6415 |
| | 518 | | https://dccourts.webex.com/meet/ctb518 | 129 685 3445 |
| | 519 | | https://dccourts.webex.com/meet/ctb519 | 129 705 0412 |
| | JM-4 | | https://dccourts.webex.com/meet/ctbjm4 | 129 797 7557 |
| | A-47 | Housing Conditions Matters | https://dccourts.webex.com/meet/ctba47 | 129 906 2065 |
| | B-52 | Debt Collection and Landlord and Tenant Trials | https://dccourts.webex.com/meet/ctbb52 | 129 793 4102 |
| | B-53 | Landlord and Tenant Matters including Lease Violation Hearings and Post Judgment Motions | https://dccourts.webex.com/meet/ctbb53 | 129 913 3728 |
| | B-109 | Landlord and Tenant Matters | https://dccourts.webex.com/meet/ctbb109 | 129 127 9276 |
| | B-119 | Small Claims Hearings and Trials | https://dccourts.webex.com/meet/ctbb119 | 129 230 4882 |