## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| MICHAELA SMITH | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 1:21-cv-00920-APM |
| v. | ) | |
| | ) | |
| HOWARD UNIVERSITY | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S REPLY IN SUPPORT OF ITS
## <u>MOTION TO DISMISS</u>

*******

## **TABLE OF CONTENTS**

I.       **INTRODUCTION** ................................................................................................... 1

II.     **ARGUMENT** ........................................................................................................ 2

     a.   **Smith Relies on Outdated Pleading Standards** ....................................... 2

     b.   **Smith Does Not Respond to Numerous Arguments Made in Howard's
Underlying Motion to Dismiss and Therefore Concedes Those Points**.................. 3

     c.   **Smith Admittedly and Impermissibly Seeks to Amend Her Complaint Through
Her Opposition Papers** ....................... 5

     d.   **Smith Concedes There Was a Rational Basis for Her Expulsion and Therefore
Deference Should be Provided to Howard's Disciplinary Decision** ...................... 6

     e.   **Smith Continues to Fail to State a Claim for Breach of Contract**........................ 8

     f.   **Smith's Scant Opposition Does Not Save Her Title IX Claim** ............................. 9

        i.   **Smith's Title IX claim is time-barred** ................................................... 9

        ii.   **Smith's Title IX claim fails to meet the pleading standards**......................... 11

III.    **CONCLUSION** ................................................................................. 14

# **TABLE OF AUTHORITIES**

## **Cases**

*Alden v. Georgetown Univ.*, 734 A.2d 1103 (D.C. 1999)....................................................7

*Arbitraje Casa de Cambio, S.A. de C.V. v. U.S. Postal Serv.*, 297 F. Supp. 2d 165
(D.D.C. 2003) ..........................................................................................................5

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................. 2, 9, 11

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..........................................................2

*Carney v. American Univ.*, 151 F.3d 1090 (D.C. Cir. 1998) ..........................................9

*Congress v. District of Columbia*, 324 F. Supp. 3d 164 (D.D.C. 2018) ......................11

*Cummings ex rel. J.C. v. Woodson Senior High Sch.*, 563 F. Supp. 2d 256 (D.D.C. 2008)...........3

*Hajjar-Nejad v. George Wash. Univ.*, 37 F. Supp. 3d 90 (D.D.C. 2014) ....................7

*Kingman Park Civic Ass'n v. Gray*, 27 F. Supp. 3d 142 (D.D.C. 2014) (same) aff'd,
815 F.3d 36 (D.C. Cir. 2016)........................................................................................5

*Kumar v. George Wash. Univ.*, 174 F. Supp. 3d 172 (D.D.C. 2016) ............................7

*Nat'l Sec. Counselors v. C.I.A.*, 898 F. Supp. 2d 233 (D.D.C. 2012)............................3

*Nnaka v. Fed. Rep. of Nigeria*, Civ. A. No. 16-1400 (JDB), 2017 WL 758478
(D.D.C. Feb. 27, 2017) ............................................................................................5

*Pappas v. D.C.*, 513 F. Supp. 3d 64 (D.D.C. 2021)....................................................6

*Plummer v. Univ. of Houston*, 860 F.3d 767 (5th Cir. 2017), as revised (June 26, 2017)...........12

*Shankar v. ACS–GSI*, 258 Fed.Appx. 344 (D.C. Cir. 2007)............................................3

*Sheppard v. Visitors of Virginia State Univ.*, 993 F.3d 230 (4th Cir. 2021)..............................13

*Stafford v. George Washington Univ.*, No. 18-CV-2789 (CRC), 2019 WL 2373332
(D.D.C. June 5, 2019)..............................................................................................10

*Tele-Communications of Key West, Inc. v. U.S.*, 757 F.2d 1330 (D.C. Cir. 1985).......................2

*Tsintolas Realty Co. v. Mendez*, 984 A.2d 181 (D.C. 2009)..........................................8

**<u>Statutes</u>**

D.C. Code § 2-1402.41(1)............................................................................................................... 10

**<u>Rules</u>**

LCvR 7(b) ...................................................................................................................................... 3

## I.      INTRODUCTION

Smith's haphazard Opposition to Howard's Motion to Dismiss ("Opposition" or "Opp.") makes several procedural threshold errors further demonstrating that dismissal of her suit is necessary. Indeed, she relies on incorrect pleading standards and brazenly inserts new facts that were not contained in her Complaint. However, in spilling unnecessary ink on aged caselaw and new facts, she fails to respond to numerous arguments in Howard's underlying Motion to Dismiss ("Motion"), thus conceding those points. These concessions include (but are not limited to) plaintiff not disputing the admission of the source document demonstrating the genesis of her expulsion: her improperly changed examination with a note stating a recalculation of her grade was necessary. This undisputed document is dispositive to her claims.

Notwithstanding these failures and concessions, Smith does not meaningfully oppose Howard's Motion on the merits. Despite her shifting stories on why she sought credit for her improperly altered examination, she has now maintained in both her Complaint and Opposition that she indeed change her answer—thus providing Howard a rational basis to expel her. And of course, a surface level review of the examination itself reveals that Defendant's decision that Plaintiff violated the Honor Code was rational. As such, the expulsion decision should, respectfully, be provided deference by this Court.

Similarly, Plaintiff has not stated a breach of any alleged contract. Rather, she conflates her expulsion, which is the contractually allowable sanction for a student who violates the Honor Code, as a breach of contract. Put another way, Plaintiff confuses Howard terminating the alleged contract per the terms of that contract as a breach.

Finally, Smith's Opposition underscores that she has failed to plausibly allege a timely Title IX claim. Smith does not meaningfully address Howard's argument that the Court should apply the D.C. Human Rights Act's one-year statute of limitations to her claim of gender

discrimination. Regardless, Smith's Title IX claim fails on the merits as well as she does not allege any facts to support her assertion that a similarly situated male student was treated more favorably. Smith's bare-bones and conclusory allegations do not plausibly allege intentional gender discrimination.

## II.     ARGUMENT

### a.  Smith Relies on Outdated Pleading Standards

Essentially admitting the insubstantiality of her allegations, Smith relies on the disavowed "no set of facts" test throughout her Opposition to argue that dismissal is not warranted here. Smith incorrectly argues that dismissal is only appropriate "when it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief," relying on case law that predates *Ashcroft v. Iqbal*, 556 U.S. 662, 678-70 (2009). (Opp. at 3) (citing *Tele-Communications of Key West, Inc. v. U.S.*, 757 F.2d 1330, 1334 (D.C. Cir. 1985)).

In *Iqbal*, the Supreme Court famously clarified that "only a complaint that states a plausible claim for relief survives a motion to dismiss," noting that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements"—which is all Smith offers—"do not suffice." 556 U.S. at 678-70. The Court further explained:

> Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"— "that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

*Id*. at 678-79; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (plaintiff must plead "enough facts to state a claim to relief that is plausible on its face"). Smith's Opposition makes clear that she cannot meet the applicable pleading standards and has nothing to offer in support of her claims but bare assertions and conclusory statements. And of course, her claim is facially

2

not plausible as she repeatedly admits that she violated the Honor Code by seeking credit for her improperly altered examination.

### b. Smith Does Not Respond to Numerous Arguments Made in Howard's Underlying Motion to Dismiss and Therefore Concedes Those Points

Smith's Opposition fails to respond to numerous arguments made in Howard's underlying Motion to Dismiss. It is well established law that such failure is treated as a concession of those arguments. *See Cummings ex rel. J.C. v. Woodson Senior High Sch.*, 563 F. Supp. 2d 256, 259 (D.D.C. 2008) ("The brief [plaintiff's counsel] filed . . . is filled with irrelevant legal principles and citations . . . , and does not address the substance of defendants' arguments as to why plaintiff's claims under the IDEA should be dismissed. As a result, the Court will dismiss plaintiff's IDEA claims."); *Shankar v. ACS–GSI*, 258 Fed.Appx. 344, 345 (D.C. Cir. 2007) (holding that plaintiff conceded the merits of an issue when he "did not respond in any way to defendant's argument" on the issue in his opposition before the district court); *Nat'l Sec. Counselors v. C.I.A.*, 898 F. Supp. 2d 233, 268 (D.D.C. 2012) ("[T]he Court may treat the plaintiff's failure to oppose the defendant's . . . arguments as a decision to concede those arguments.") (internal citations omitted); *see also* LCvR 7(b) (when a party fails to oppose a motion, the Court may treat the motion as conceded).

More specifically, in Howard's underlying Motion it raised the following arguments that were not opposed by Plaintiff:

- A facial review of the examination in question reveals that Smith sought credit for a surreptitiously altered examination (Motion at 8);

- Smith did not appeal her expulsion and it was therefore a final decision accepted by her (*Id*. at 17-18);

- Smith does not plead that she perfected her appeal of the Promotions Committee (*Id.* at 19-20);[1]

- June 12, 2019, the date on which Smith was notified of her expulsion, is the date on which the applicable limitations period began to run (*Id.* at 26); and

- Smith has not adequately pled that her gender was a "but-for" cause of the University's actions, as required by Title IX (*Id.* at 31).

Rather than oppose these arguments, Smith reasserts the same facts initially asserted in her Complaint (as well as impermissibly asserts new facts not alleged in the Complaint). However, her silence on these issues serves as a concession requiring dismissal of her claims.

Indeed, Plaintiff's silence on these myriad issues is telling as she cannot meaningfully oppose these arguments. As argued in Defendant's underlying Motion—the issue before this Court is not whether Plaintiff's Honor Council hearing was procedurally perfect; but, rather, as a matter of law, whether the Court can revisit Plaintiff's expulsion considering (1) the examination in question demonstrably shows that Plaintiff sought credit for an improperly altered examination; (2) she has pled at numerous junctures that she made a mistake by improperly changing the examination; and (3) she did not appeal, and therefore accepted, her expulsion as recommended by the Honor Council. Plaintiff's transparent attempt to use this suit as a mechanism to sidestep the consequences of her actions does not state a plausible breach of contract or Title IX claim.

---

[1]    Smith entirely abandoned any contractual claim that she did not receive a response to her unperfected appeal of the Promotions Committee decision. Indeed, Howard argued in its Motion that Smith did not initiate her appeal of her dismissal from the Promotions Committee with the appropriate parties and therefore that appeal was not perfected. (Motion at 19-20). Nonetheless, her dismissal by the Promotions Committee was superseded by her later expulsion recommended by the Honor Council and therefore she has no damages for her dismissal. Smith focuses her Opposition papers with respect to her breach of contract claim on the composition of her Honor Council panel—but does not respond to Howard's contractual arguments regarding her dismissal by the Promotions Committee. This abandonment and concession of these arguments further bolsters that dismissal of her breach of contract claim is warranted.

**c. <u>Smith Admittedly and Impermissibly Seeks to Amend Her Complaint Through her Opposition Papers</u>**

It is well settled law that a plaintiff may not seek to amend her complaint by adding new facts to the record in an opposition to a defendant's motion to dismiss. *See, e.g., Nnaka v. Fed. Rep. of Nigeria*, Civ. A. No. 16-1400 (JDB), 2017 WL 758478, at *11 (D.D.C. Feb. 27, 2017) ("[I]t 'is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss.'") (*quoting Arbitraje Casa de Cambio, S.A. de C.V. v. U.S. Postal Serv.*, 297 F. Supp. 2d 165, 170 (D.D.C. 2003)); *Kingman Park Civic Ass'n v. Gray*, 27 F. Supp. 3d 142, 159-60 (D.D.C. 2014) (same) aff'd, 815 F.3d 36 (D.C. Cir. 2016)).

Here, Smith's Opposition is improper as it brazenly admits to asserting new facts not in the Complaint. Indeed, Smith spends much of her Opposition discussing "new evidence [that] has come to light" and quoting "the Honor Council minutes," which was neither referenced nor attached to Smith's Complaint. (Opp. at 7). Smith even goes so far as to attach an undated document she claims is a "Spring 2019 Honor Council Committee Roster"—yet another document that was neither referenced nor attached to the Complaint—in an effort to save her claims. (*Id.* at 10). Other examples of Smith's shifting allegations include:

- Smith's speculation that "there was likely no investigation" and "[i]f any investigation occurred . . . it appears that Dr. Ford conducted that investigation, *not* the co-chair and the vice-chair of the honor council . . . ." (*Id.* at 8, 9).

- Smith's specious accusation that "Defendant may have doctored or altered the HCC minutes." (*Id.* at 9, fn. 1).

- Smith's assertion that "[o]n the day of the exam, it was unclear which canal was marked; the tag could be moved." (*Id.* at 8).

- Smith's claim that "[MS-4] was pulled into the hearing by Dr. Ford, who had ill-will toward Ms. Smith. [MS-4] is a close mentee of Dr. Ford and was under her influence." (*Id.* at 10).

- Smith's assertion that a "male student was affirmatively reached out to by Dr. Ford about how to appeal and given guidance about the process." (*Id.* at 11).

While this is not an exhaustive list of new facts alleged by Smith in her Opposition, it is demonstrative of facts that Smith improperly seeks to add to the record via her Opposition pleading. Any newly presented facts in Smith's Opposition should not be considered by the Court in deciding Defendant's Motion to Dismiss. Howard is prejudiced by Smith's reliance on new allegations and documents outside of the four corners of her own Complaint as it cannot effectively respond to Smith's shifting allegations in her attempts to avoid dismissal. *See Pappas v. D.C.*, 513 F. Supp. 3d 64, 81 (D.D.C. 2021) (refusing to consider "new allegations" where plaintiffs "attempt[ed] to provide additional facts in their opposition to address [ ] omission[s]" in their pleadings). Howard should not be forced to hit the proverbial moving target.

### d.  Smith Concedes There Was a Rational Basis for Her Expulsion and Therefore Deference Should be Provided to Howard's Disciplinary Decision

As stated in Howard's underlying Motion, and agreed to by Plaintiff, generally speaking, the disciplinary decisions made by academic institutions are provided deference by the Courts. The Parties concur that those decisions can only be disturbed should there be a showing of capriciousness or that there was no rational basis for the disciplinary decision. No such showing has been made by this Plaintiff as to her expulsion.

More specifically, despite having shifting theories from her Complaint to her Opposition, Plaintiff has repeatedly admitted to the rational basis for her expulsion: she changed her answer on the examination in question. In her Complaint she pled that "[she] made a mistake in the form of her allowed response" and that her challenge was written up "in an unapproved manner." (Compl. ¶¶ 61, 86). Now, in her Opposition, she asserts for the first time that she changed her answer on the examination because the underlying examination was flawed and that she did not

6

intend for her altered response to be viewed as a "standalone document". (Opp. at 8-9). Nonetheless, in all stories told by Plaintiff, she concedes that she did in fact change the answer on her examination and resubmitted the altered examination to the instructor. This is precisely the rational basis supporting her expulsion.

Moreover, while Plaintiff mouths the words "arbitrary", "capricious" and "ill-will" to support her position that the disciplinary decision should not be entitled to deference, those claims are cursory, implausible and inaccurate on their face.[2] Specifically, Plaintiff asserts without support that "Dr. Ford orchestrated an abuse of power, resulting in Michaela's dismissal. Dr. Ford's ill-will toward Michaela caused her dismissal." (Opp. at 7). However, Dr. Wilson (not Dr. Ford) made the initial allegation that Plaintiff violated the Honor Code. (Compl. ¶¶ 20-23). The Honor Council (not Dr. Ford) found that Plaintiff violated the Honor Code and recommended her expulsion. (*Id*. ¶ 80). And it was Dean Mighty (not Dr. Ford) who accepted the recommendation from the Honor Council to expel Plaintiff. (*Id*.). Plaintiff's attempt to pin her expulsion on Dr. Ford is detached from the facts pled by Plaintiff that Dr. Ford did not recommend, decide, or impose Plaintiff's expulsion.

Finally, bolstering that deference is necessary, the source document which Plaintiff does not dispute—the altered examination—clearly demonstrates that Plaintiff sought credit for her improperly altered examination. (Motion at Exhibit 2 and Exhibit 3). No matter the gloss Plaintiff provides to support her position, she cannot escape that the face of the documents at

---

[2]     Plaintiff's exclusive reliance on the *Kumar* case to support her position is misplaced. (Opp. at 7) (citing *Kumar v. George Wash. Univ.*, 174 F. Supp. 3d 172, 192 (D.D.C. 2016)). Namely, the plaintiff in *Kumar* was a professor and not a student. Moreover, the plaintiff in *Kumar* did not admit to the conduct at issue as Plaintiff in the instant matter has done. And of course, as stated in Howard's Motion, there is a heightened deference provided to health care programs, such as Howard's College of Medicine, which did not apply to the plaintiff in *Kumar*. (Motion at 15) (citing *Hajjar-Nejad v. George Wash. Univ.*, 37 F. Supp. 3d 90, 117 (D.D.C. 2014); *Alden v. Georgetown Univ.*, 734 A.2d 1103, 1109-10 (D.C. 1999)).

issue demonstrate that she changed her answer from "anterior semicircular canal" to "posterior semicircular canal" with a note stating "my answer was correct, yet marked wrong … recalculation needed [.]"[3] Certainly, Plaintiff's attempt for a "recalculation" based on an admittedly altered examination serves as a requisite rational basis for Defendant's decision to expel her and does not give rise to a plausible allegation of capriciousness.

      e.  **Smith Continues to Fail to State a Claim for Breach of Contract**

As stated in Howard's underlying Motion, to state a claim for breach of contract, Smith must establish (1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by breach. *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009). Howard asserted in the Motion that Plaintiff failed to identify any breach, to which Plaintiff responded that the breach occurred "when the Defendant unilaterally rescinded the contract to provide educational services to Plaintiff [.]" (Motion at 16-17; Opp. at 5). By making this statement, Plaintiff conflates Howard terminating the alleged contract per the terms of that contract with a breach.

Indeed, the Policy allows for the expulsion of a student who was found to have violated the Honor Code as determined by the Honor Council, such as Plaintiff here. (Motion at Exhibit 1, p. 37). At core, Plaintiff admits that she had all material processes required by the Policy, including an Honor Council hearing to which she participated and had the opportunity to appeal, that resulted in a finding that she violated that Honor Code and a recommendation that she be

---

[3]     Plaintiff repeatedly makes the misleading claim that *even if* her examination was recalculated, it would not change her grade on the specific examination. (Opp. at 9). However, as noted in Plaintiff's Complaint, her overall grade in the course at issue was cumulative—meaning that every point on every assignment and examination was factored into her final grade. (Compl. ¶¶ 63-69). Put another way, a higher score on the examination at issue would have impacted her total cumulative course grade.

expelled. This is not indicative of a breach of contract but, rather, demonstrates that Howard terminated any applicable contract per the terms of the Policies.

Plaintiff also makes the bizarre allegation that she was "not timely given a decision from the honor council, thus, a timely appeal of that decision was impossible." (Opp. at 11). This claim is not supported by the Policy as there is no requirement that Plaintiff (1) receive the disposition from the Honor Council in (2) any specified period of time. (Motion at <u>Exhibit 1</u>, pp. 37-38). And of course, Plaintiff pled that she received the expulsion decision from Dean Mighty. (Compl. ¶ 80). That letter explicitly advised Plaintiff that she "[had] a right to appeal [the expulsion] decision" and directed her to the applicable policy governing any appeal. (Motion at <u>Exhibit 6</u>). Any claim raised by Plaintiff that she couldn't appeal her expulsion is implausible fiction directly refuted by the facts pled by her, and cannot support a breach of contract claim.

### f.  <u>Smith's Scant Opposition Does Not Save Her Title IX Claim</u>

Plaintiff's Opposition confirms that she has failed to plausibly allege a timely claim of intentional discrimination on the basis of her sex, as is required to state a Title IX claim. Plaintiff must do more than simply allege that her opinion is that "males are given better treatment than females" at Howard (Opp. at 11) to "nudg[e] [her] claim of purposeful discrimination across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 678.

### i.  **Smith's Title IX claim is time-barred**

While relying on a case involving claims pled under 42 U.S.C. § 1981, <u>not</u> Title IX, Plaintiff incorrectly argues that because Title IX does not have its own statute of limitations, "courts have borrowed the statute of limitations from 42 U.S.C. § 1983." (Opp. at 12) (citing *Carney v. American Univ.*, 151 F.3d 1090, 1096 (D.C. Cir. 1998)). To the contrary, it is well-established (by even the case law Smith misguidedly relies on) that when a federal law does not

specify a statute of limitations, the "'most appropriate or analogous' state law" determines the applicable statute of limitations. *Carney*, 151 F.3d at 1096 (citation omitted).

Smith does not address Howard's argument that the most analogous state law for her gender discrimination claim is the D.C. Human Rights Act ("DCHRA"), which has a one-year statute of limitations to bring a gender discrimination claim. (Motion at 23-27). Moreover, she does not dispute that the relevant date for determining the applicable limitations period should be June 12, 2019, the date on which she was notified of her expulsion from the COM for violating the Honor Code. (Motion at 26). Instead, Plaintiff merely argues that D.C. courts historically have applied a three-year statute of limitations. (Opp. at 12). However, as discussed extensively in Howard's Motion, courts in this District have more recently indicated that using a three-year statute of limitations for claims of discrimination—like Smith's claim here—is "probably incorrect". *See* Motion at 23-25 (citing *Stafford v. George Washington Univ.*, No. 18-CV-2789 (CRC), 2019 WL 2373332, at *8 (D.D.C. June 5, 2019)).

As argued by Plaintiff, her Title IX claim alleges that Howard, an educational institution, intentionally discriminated against her by "den[ying her] the benefit of an appeal" of her academic dismissal by the Promotions Committee. (Compl. ¶ 78). The DCHRA—which prohibits "educational institution[s]" from "deny[ing], restrict[ing], or … abridg[ing] or condition[ing] the use of, or access to, any of its facilities, services, programs, or benefits of any program or activity to any person . . . for a discriminatory reason," including a student's sex or gender—is clearly more analogous to Plaintiff's claim than D.C.'s personal injury statute. D.C. Code § 2-1402.41(1); *see also Stafford*, 2019 WL 2373332, at *7-8 (finding an anti-discrimination statute was "a closer cousin to the DCHRA than it is to D.C.'s general personal injury statute, which 'cover[s] a much wider swath of injuries, often including conduct that

10

involves no discrimination whatsoever[]"") (quoting *Congress v. District of Columbia*, 324 F. Supp. 3d 164, 172 (D.D.C. 2018)).

This is especially so as Smith's Title IX claim does not involve allegations of sexual assault or harassment, which would be more akin to a claim of personal injury. Rather, Smith's claims of alleged differential treatment regarding an appeal process is akin, if not identical, to a gender discrimination claim brought under the DCHRA. As noted in Howard's Motion, Smith should not be able to circumvent the applicable local statute of limitations for such gender discrimination claims merely because she brought a claim under a federal civil rights law that does not contain its own limitations provision instead. (Motion at 25-26).

In light of the shared purpose, rights, and remedies of Title IX and the DCHRA, the DCHRA's one-year statute of limitations should apply to Plaintiff's claims of gender discrimination, pled under Title IX. And, as Plaintiff concedes that the statute of limitations began to run on June 12, 2019 and that she filed the instant suit on March 22, 2021, her Title IX claim is conclusively time-barred and thus should be dismissed.

### ii.  Smith's Title IX claim fails to meet the pleading standards

Dismissal of Smith's Title IX claim is further warranted as she cannot state a plausible claim. Smith cannot state a viable gender discrimination claim by simply dressing up her complaint regarding her appeal of her academic dismissal with conclusory allegations that Howard's actions were motivated by gender bias, wholly unsupported by any *specific* facts that plausibly support such a claim. That is precisely why pleading standards exist. *See Iqbal*, 556 U.S. at 678 ("an unadorned, the-defendant-unlawfully-harmed-me accusation" will not survive a motion to dismiss, nor will a complaint comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action").

Perhaps recognizing that she cannot plead sufficient facts to meet *Iqbal*'s and *Twombly*'s plausibility standard, Smith wrongly asserts that her Title IX claim should be allowed to move forward because "[a]s [she] could prove facts which would entitle her to relief, post-discovery, dismissal is not appropriate." (Opp. at 12). As discussed *supra*, the "no set of facts" test upon which Smith relies has since been rejected.

Smith further attempts to overcome her pleading deficiencies through unsupported speculation that "[t]hrough discovery, Ms. Smith should be able to obtain evidence to provide to the Court . . . ." (Opp. at 12). This too must fail. For the reasons discussed in Howard's Motion and below, the conclusory allegations of gender bias Plaintiff asserts here cannot withstand a Rule 12(b)(6) motion.

*First*, Smith's Opposition fails to address Howard's argument that she does not state a colorable "selective enforcement" claim. As in her Complaint, Smith merely states that "Defendant's refusal to acknowledge and consider Plaintiff 's appeal was an act of selective enforcement affected by Ms. Smith's gender." (Opp. at 11-12). But merely parroting the words "selective enforcement" is not enough. While courts have held that for a "selective enforcement" claim, a plaintiff must allege that "the severity of the penalty and/or the university's decision to initiate proceedings was affected by the charged student's gender," all Smith has alleged here is a procedural issue she encountered with the University's appeal process for academic dismissals. (Motion at 28) (citing *Plummer v. Univ. of Houston*, 860 F.3d 767, 777 (5th Cir. 2017), as revised (June 26, 2017)). This is not enough—especially as the Complaint demonstrates that any appeal of her academic dismissal was functionally mooted by her expulsion for violating the Honor Code.

*Second*, Smith's Opposition does nothing to remedy her Complaint's failure to allege that a *similarly situated* male student was treated more favorably. Again, Smith merely states that "[t]he male student was given a decision and was allowed to appeal his decision." (Opp. at 11). This does not plausibly allege that the male student and Smith were similarly situated under prevailing case law. *See, e.g.*, *Sheppard v. Visitors of Virginia State Univ.*, 993 F.3d 230, 237 (4th Cir. 2021) (finding "no facts to support [plaintiff's] conclusory allegation that he was similarly situated to Student A" even where plaintiff alleged "generally-shared facts surrounding the [incident at issue], including the same broad time frame, the same students involved and the same Code of Conduct invoked"). Here, as pled, the male student may not even have faced the same sanction as Smith did—academic dismissal. Nor may he have failed to notify the proper parties of the appeal, like Smith did, or have been simultaneously facing academic dismissal and disciplinary charges (and, ultimately, expulsion) for violating the Honor Code, like Smith was.[4] As the cases Howard set forth in its Motion amply demonstrate, such bare-bone allegations of differential treatment cannot survive a motion to dismiss. (Motion at 30-31). Without any specific facts pled to support that the male student was similarly situated to Plaintiff, there are simply no plausible allegations of gender discrimination.

*Third*, Smith's Opposition fails to address and thus concedes Howard's argument that Title IX requires a plaintiff to plead that her gender was a "but-for" cause of any adverse action, which the Complaint fails to do. (Motion at 31). Particularly in light of Smith's subsequent expulsion for admittedly violating the Honor Code, there are no allegations in the Complaint that

---

[4]    While Smith improperly seeks to add new "facts" to the Complaint through her Opposition, by arguing that "[t]he male student was affirmatively reached out to by Dr. Ford about how to appeal and given guidance about the process," this does not support Smith's Title IX claim regardless. (Opp. at 11). Smith does not allege that she did not know *how to appeal* her academic dismissal. To the contrary, her Complaint alleges that "Smith filed a timely letter of appeal to the Committee on Promotions and Graduations [ ] decision." (Compl. ¶ 70).

plausibly suggest that Smith's gender was a but-for cause of the University's actions. As such, Smith's Title IX claim must be dismissed.

## III.    CONCLUSION

For the above-stated reasons and those in Defendant's underlying Motion, Defendant respectfully requests that the instant lawsuit be dismissed with prejudice.


September 28, 2021                                  Respectfully submitted,

                                                   **HOWARD UNIVERSITY**

                                                   /s/ *Nathiya Nagendra*
                                                   Zachary I. Shapiro
                                                   Senior Associate General Counsel
                                                   D.C. Bar # 1021639
                                                   Nathiya Nagendra
                                                   Associate General Counsel
                                                   D.C. Bar # 1031055
                                                   Howard University
                                                   2400 Sixth Street, N.W.
                                                   Washington, D.C. 20059
                                                   T: 202-806-2664
                                                   Email: zachary.shapiro@howard.edu
                                                          nathiya.nagendra@howard.edu

**<u>CERTIFICATE OF SERVICE</u>**

I certify that a true copy of the foregoing Defendant's Reply in Support of its Motion to

Dismiss was filed electronically on September 28, 2021 and thereby served on counsel of record.


 /s/ *Nathiya Nagendra*
Nathiya Nagendra