## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

———————————————————————

|  |  |
|---|---|
| **MICHAELA SMITH,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) **Case No. 21-cv-00920 (APM)** |
| **HOWARD UNIVERSITY,** | ) |
| | ) |
| **Defendant.** | ) |

———————————————————————

## <u>MEMORANDUM OPINION AND ORDER</u>

### I.

Plaintiff Michaela Smith brings this action against Defendant Howard University ("Howard" or "the University") following her removal from the Howard College of Medicine ("HCOM") by both expulsion and dismissal. *See* Def.'s Notice of Removal, ECF No. 1, Compl., ECF No. 1-1 [hereinafter Compl.]. Plaintiff's expulsion arose from an Honor Council Committee's finding that she had changed an exam answer during a post-exam process that allowed students to challenge their grade based on their original responses. *Id.* ¶ 80. Separately, HCOM's Committee on Promotions and Graduation ("Promotions Committee") dismissed her from the school because the finding of academic dishonesty caused her to receive an overall failing grade during a repeat year. *Id.* ¶¶ 62–70.

Plaintiff advances two causes of action. In Count One, she alleges breach of contract. Specifically, she claims that HCOM (1) wrongfully expelled her by failing to comply with its stated procedures for adjudicating alleged disciplinary infractions before the Honor Council, and (2) improperly dismissed her by not reviewing her appeal from the Promotions Committee's decision. *Id.* ¶¶ 29, 32–48, 54–61, 74–77, 85, 87–88. In Count Two, Plaintiff asserts a violation

of Title IX of the Education Amendments of 1972.  *Id.* ¶¶ 91–98.  As to that claim, Plaintiff contends that gender-based animus was the reason HCOM refused to consider her appeal from the Promotion Committee's dismissal decision.  *Id.* ¶¶ 94, 96.

The University moves to dismiss.  First, the University argues that Plaintiff fails to state a claim for breach of contract because (1) she did not take a procedurally perfected appeal from the expulsion and dismissal decisions and (2) her pleading does not identify a material breach.  Def.'s Mot. to Dismiss, ECF No. 9 [hereinafter Def.'s Mot.], Def.'s Mem. of P. & A. in Supp. of Def.'s Mot., ECF No. 9-1 [hereinafter Def.'s Mem.], at 17–22.  Second, it contends that Plaintiff's Title IX claim fails because (1) the statute of limitations has run and (2) she has not stated a plausible claim of gender discrimination.  *Id.* at 22–31.  For the reasons that follow, the University's motion is denied.

## II.

### A.

The court begins with Plaintiff's Title IX claim and the University's timeliness challenge. Title IX provides in pertinent part:  "No person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."  20 U.S.C. § 1681(a).  Title IX does not contain an express private right of action; therefore, it contains no defined statute of limitations for a claim such as the one brought by Plaintiff.  The Supreme Court, however, has recognized an implied private right of action to enforce Title IX.  *See Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 280–81 (1998) (describing the development of the implied private right of action).  To identify the applicable limitations period for an implied private right of action, courts must "'borrow' the most suitable statute or other rule of timeliness from . . . the most closely analogous

statute of limitations under state law." *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 158 (1983).

The parties disagree as to the "most closely analogous" District of Columbia law from which to "borrow." Plaintiff insists that the District of Columbia's three-year limitations period governing personal injury claims is controlling. Pl.'s Opp'n to Def.'s Mot., ECF No. 11 [hereinafter Pl.'s Opp'n], at 12.[1] The University, on the other hand, urges the court to apply the one-year limitations period for claims brought under the District of Columbia Human Rights Act ("DCHRA"). *See* Def.'s Mem. at 23–24; Def.'s Notice of Suppl. Authority, ECF No. 13; Def.'s Second Notice of Suppl. Authority, ECF No. 15. The difference matters in this case. Plaintiff did not file suit until March 22, 2021. Assuming her claim began to accrue on July 26, 2019—the date the University's Provost affirmed Plaintiff's expulsion—Plaintiff's Title IX claim would be untimely if a one-year limitations period applies but timely if governed by a three-year limitations period.

The D.C. Circuit has not definitively answered which limitations period applies to Title IX claims.[2] Other Circuits have held that personal injury actions are "most closely analogous" to Title IX claims and applied the corresponding limitations period under state law. *See, e.g.*, *Stanley v. Trs. of Calif. State Univ.*, 433 F.3d 1129, 1135–36 (9th Cir. 2006); *Curto v. Edmundson*, 392 F.3d 502, 504 (2d Cir. 2004); *see also Doe v. Howard Univ.*, No. 20-cv-1769 (CJN), 2022 WL 898862, at *5 (D.D.C. Mar. 28, 2022) (citing cases). Judges in this District, until recently, had

---

[1] Citing only *Carney v. American University*, 151 F.3d 1090 (D.C. Cir. 1998), Plaintiff misleadingly asserts that "[t]he D.C. caselaw is well-established that a Title IX claim has a three-year statute of limitations." Pl.'s Opp'n at 12. But *Carney* involved a claim arising under 42 U.S.C. § 1981, not Title IX. Although, as discussed below, this court believes that *Carney* supports applying a three-year limitation period to Title IX claims, it is disingenuous to say that the longer limitations period is "well-established" law.

[2] The D.C. Circuit has said in an unpublished, per curiam Order that the "Title IX statute of limitations is the state statute for personal injury claims." *Dasisa v. Univ. of D.C.*, No. 06-7106, 2006 WL 3798886, at *1 (D.C. Cir. Oct. 3, 2006) (citing *Stanley v. Trs. of Calif. State Univ.*, 433 F.3d 1129, 1134 (9th Cir. 2006)). However, under D.C. Circuit rules, the unpublished disposition in *Dasisa* carries no "precedential value." D.C. Cir. R. 36(e)(2).

uniformly held the same.  They concluded that the District of Columbia's three-year, catch-all limitations period for personal injury claims under D.C. Code § 12-301(8) govern claims brought under Title IX.  *See, e.g.*, *Hajjar-Nejad v. George Washington Univ.*, 873 F. Supp. 2d 1, 15 (D.D.C. 2012); *Mwabira-Simera v. Howard Univ.*, 692 F. Supp. 2d 65, 71 (D.D.C. 2010); *Richards v. Duke Univ.*, 480 F. Supp. 2d 222, 237-38 (D.D.C. 2007); *cf. Cavalier v. Cath. Univ. of Am.*, 306 F. Supp. 3d 9, 42 (D.D.C. 2018) (acknowledging that both parties agreed that a three-year limitations period applied to a Title IX claim).

A recent decision, however, takes a different tack.  In *Doe v. Howard University*, a court in this District held that the DCHRA's one-year limitations period applies to Title IX claims—the very position the University advocates here.  *See Doe*, 2022 WL 898862, at *8.  The court in *Doe* declined to follow the course charted by various courts of appeals, reasoning that "[v]ery few . . . actually grapple[d] with which analogous state law (and its right of action) is most similar to Title IX (and its implied right of action)."  *Id.* at *5.  The court observed instead that Title IX gender discrimination claims "do not seem analogous to personal-injury claims under D.C. law."  *Id.* at *6.  That observation was predicated in part on Supreme Court precedent limiting institutional liability for certain types of Title IX claims to cases where the school was "deliberately indifferent" to a teacher's or student's acts of gender-based harassment.  *See id.* (first citing *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 642 (1999); and then citing *Gebser*, 524 U.S. at 283).  Such liability was "something different than a personal-injury claim," the court stated.  *Id.*  The court also relied on a D.C. Court of Appeals decision, *Jaiyeola v. District of Columbia*, 40 A.3d 356 (D.C. 2012), which holds that the DCHRA, and not a personal injury tort, is the most closely analogous District of Columbia law to § 504 of the federal Rehabilitation Act.  *See Doe*, 2022 WL 898862, at *7 (citing *Jaiyeola*, 40 A.3d at 365–69).  The *Jaiyeola* court applied the DCHRA's one-

4

year limitations period to the plaintiff's disability discrimination claim instead of the three-year period applicable to personal injury claims. *Jaiyeola*, 40 A.3d at 365. Finding *Jaiyeola* persuasive, the court in *Doe* similarly concluded that "the DCHRA is the most closely analogous statute of limitations for [the plaintiff's] Title IX claims." 2022 WL 898862, at *8; *see also Stafford v. George Washington Univ.*, No. 18-cv-2789 (CRC), 2022 WL 35627, at *10 (D.D.C. Jan. 4, 2022) (holding the DCHRA provided the closest state law analogue to a claim under Title VI of the Civil Rights Act of 1964, which prohibits race discrimination in educational programs and activities receiving federal funds).

Although the reasoning in *Doe* is not without force, it must give way to D.C. Circuit precedent. In *Carney v. American University*—which the court in *Doe* did not cite—the D.C. Circuit confronted the issue of whether a three-year or a one-year limitations period applied to a retaliation claim brought under 42 U.S.C. § 1981. *Carney*, 151 F.3d 1090, 1096 (D.C. Cir. 1998). The defendant argued that "the District's one-year statute of limitations for certain enumerated intentional torts, D.C. Code Ann. § 12-301(4), not its three-year residual statute of limitations for other personal injury claims, *id.* § 12-301(8), represents the most 'analogous' statute of limitations for purposes of section 1981 actions." *Id.* The D.C. Circuit disagreed, holding that the three-year limitations period governed. "For statute of limitations purposes," the Circuit explained, "the Supreme Court treats section 1981 claims like claims under 42 U.S.C. § 1983," and the Court has held that "claims under section 1983 are governed by the residual or general personal injury statute of limitations (like section 12-301(8)), rather than the statute of limitations for enumerated intentional torts (like section 12-301(4))." *Id.* Accordingly, the court in *Carney* held that "section 12-301(8)'s three-year statute of limitations applies to all section 1981 claims."

*Id.*  Notably, the court so held even though it recognized that the plaintiff's race discrimination claim under the DCHRA "might be barred by the DCHRA's one-year" limitations period.  *Id.*

The court can discern no material distinction between section 1981 and Title IX for purposes of the "most closely analogous" state law inquiry.  In *Goodman v. Lukens Steel Co.*, the Supreme Court observed that section 1981's prohibition on race discrimination in contracting "is part of a federal law barring race discrimination, which . . . is a fundamental injury to the individual rights of a person."  482 U.S. 656, 661 (1987).  Claims under section 1981, the Court concluded, "are in essence claims for personal injury."  *Id.* (making that statement as to section 1983 claims and later stating that its "characterization of § 1983 claims is thus equally appropriate" to section 1981 claims).  The same can be said about Title IX.  It is part of a constellation of federal laws barring gender discrimination.  And, if race discrimination "is a fundamental injury to the individual rights of a person," gender discrimination must be as well.  *Id.  Goodman* and *Carney* thus compel the conclusion that the District's three-year residual limitations period for other personal injury claims governs Title IX claims.

This holding is consistent with the Supreme Court's stated goal of ensuring "ease and predictability" in selecting an analogous state law for limitations purposes in civil rights cases. *Owens v. Okure*, 488 U.S. 235, 243 (1989).  In *Owens*, the Court confronted whether to take an intentional torts approach or residual personal injury approach to defining the limitations period for section 1983 claims.  *See id.* at 242.  Describing its inquiry as a "practical" one and emphasizing the need for a statute that "can be applied with ease and predictability in all 50 states," the Court held that the singularity of residual statutes made for a better guide.  *Id.* at 243, 245, 248.  On the other hand, determining a limitations period from the relevant intentional tort "bre[eds] chaos and uncertainty"—in part because each state splits intentional torts into different legal or

organizational categories that can lead to an incongruent patchwork of federal law. *See id.* at 243–44 (providing an example of this phenomenon in the geographically proximate states of Ohio, Pennsylvania, and Michigan). The Court also noted that a claim under section 1983 often will not have a clean state law analogue. *See id.* at 249. The Court concluded that "applying the statute of limitations for the limited category of intentional torts would be inconsistent with § 1983's broad scope." *Id.* at 248-49.

Borrowing the District's personal injury limitations period for Title IX claims is in line with the "practical inquiry" the Court endorsed in *Owens*. *Id.* at 242. To be sure, Title IX is directed at barring far narrower conduct than is section 1983 and therefore the rationale advanced in *Owens* does not fully apply here. Nevertheless, by borrowing the District's personal injury limitations period, the court here takes the same approach as every federal appellate court to have considered the question, thereby furthering "[t]he federal interests in uniformity, certainty, and the minimization of unnecessary litigation." *Wilson v. Garcia*, 471 U.S. 261, 275 (1985). Applying the DCHRA's one-year limitations period to Title IX claims, on the other hand, would make this District an outlier and unnecessarily create a patchwork of limitations periods among civil rights statutes in this jurisdiction. Persons who suffer gender discrimination in the educational setting should not have to rush to the courthouse any more quickly than victims of race discrimination in contracting.

Nor does the D.C. Court of Appeals' decision in *Jaiyeola* require the court to apply the DCHRA's one-year limitations period to Title IX claims. Although the court must borrow from state law to determine the appropriate limitations period, the characterization of a claim is a matter of federal law. *See Wilson*, 471 U.S. at 268–71. Thus, the court here must follow the logic of

*Goodman, Owens*, and *Carney*, not *Jaiyeola*, in identifying the proper limitations period for a Title IX claim.

Accordingly, the court will apply the District of Columbia's three-year residual personal injury limitations period to Plaintiff's Title IX claim. Therefore, it was timely filed.

**B.**

Having decided that Plaintiff's Title IX claim is not time-barred, the court turns to the University's alternative ground for dismissal: namely, that Plaintiff has failed to state a plausible claim of gender discrimination.

A plaintiff asserting a claim of discrimination need only allege facts that "give[] [the defendant] fair notice of the basis for [the plaintiff's] claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002). In *Swierkiewicz*, the Supreme Court held that a complaint alleging discrimination on the basis of national origin satisfied the notice-pleading requirement where the plaintiff had "detailed the events leading to his termination, provided relevant dates, and included the ages and nationalities of at least some of the relevant persons involved with his termination." *Id.* In light of *Swierkiewicz*, "courts in this Circuit have consistently recognized the ease with which a plaintiff claiming . . . discrimination can survive a motion to dismiss." *Fennell v. AARP*, 770 F. Supp. 2d 118, 127 (D.D.C. 2011) (cleaned up).

Plaintiff's Complaint meets the minimum standard of notice pleading established in *Swierkiewicz*. The Complaint details (1) the events leading to her dismissal from HCOM with dates, Compl. ¶¶ 66–70; (2) the official who allegedly discriminated against her (Dean Mighty), *id.* ¶ 72; (3) the nature of the discrimination (denying her the benefit of an appeal), *id.* ¶¶ 70, 72, 93; and (4) one theory by which she hopes to prove pretext (that the University did not expel a substantially similarly situated male student), *id.* ¶¶ 78, 93. This pleading satisfies the notice

requirements of Rule 8.  *See Swierkiewicz*, 534 U.S. at 515 (holding that a plaintiff need not even plead a prima facie case of discrimination to satisfy Rule 8(a)).  Plaintiff therefore has succeeded in stating a plausible claim of gender discrimination under Title IX.

## III.

That then leaves Plaintiff's claim for breach of contract.  The University makes three main arguments for dismissal of that claim:[3]  (1) Plaintiff did not appeal the Honor Council Committee's expulsion decision and therefore it was "a final decision accepted by her," Def.'s Mem. at 17; (2) Plaintiff's failure to perfect an appeal from the Promotions Committee decision constitutes an unsatisfied "condition precedent" that forecloses her claim, *id.* at 19–20; and (3) Plaintiff at most alleges a "few minor procedural defects" but not a material breach, *id.* at 20.  The court is not persuaded by any of these arguments.

## A.

The University asserts that "[t]o the extent that [Plaintiff] alleges there were procedural irregularities with her Honor Council hearing, it was incumbent on her to preserve those issues through an appeal through the University's processes."  *Id.* at 18.  This is tantamount to a failure-to-exhaust argument.  But the University cites no case for the proposition that a disciplined student *must* exhaust all administrative remedies before filing suit.  It is true that where a contract calls for such exhaustion, courts have not hesitated to enforce the requirement.  *See, e.g.*, *Vaca v. Sipes*, 386 U.S. 171, 184 (1967) ("Since the employee's claim is based upon breach of the collective bargaining agreement, he is bound by terms of that agreement which govern the manner in which

---

[3] The University also contends that the court must afford "heightened deference" to its decision to expel Plaintiff for a disciplinary violation.  Def.'s Mem. at 14–16.  But that argument misconstrues the essence of Plaintiff's breach claim, which is that the University committed a breach of contract by failing to afford Plaintiff various protections set forth in the *HCOM Policies and Procedure Manual*.  *See* Pl.'s Opp'n at 5 ("The irregularities in the [Honor Council Committee] Hearing are a failure to substantially comply with their own usual practices and published policies, resulting in breach.").  As Plaintiff's claim does not directly challenge the ultimate decision to expel, "heightened deference" is not due in this case.

contractual rights may be enforced. For this reason, it is settled that the employee must at least attempt to exhaust exclusive grievance and arbitration procedures established by the bargaining agreement."); *Commc'ns Workers of Am. v. AT&T Co.*, 40 F.3d 426, 432 (D.C. Cir. 1994) (enforcing exhaustion requirement in the context of pension plans). But the University points to no such requirement in any of its undertakings with Plaintiff. *Cf. Pride v. Howard Univ.*, 384 A.2d 31, 35 (D.C. 1978) ("Contracts are written, and are to be read, by reference to the norms of conduct and expectations founded upon them. This is especially true of contracts in and among a community of scholars, which is what a university is."). Plaintiff's failure to appeal her expulsion, at least at this stage, therefore does not preclude her from filing suit.

## B.

Next, the University asserts that Plaintiff's claim of breach cannot proceed because, contrary to the *HCOM Policies and Procedures Manual*, she did not appeal the Promotions Committee's decision to both the Dean of HCOM and the Senior Associate Dean for Academic Affairs; Plaintiff only noticed the Dean. Def.'s Mot. at 19. The University contends that perfecting an appeal "is a condition precedent to the appellate process" that Plaintiff failed to satisfy, thereby foreclosing her claim. *Id.* Implicit in this argument is that Plaintiff was required to perfect an administrative appeal before filing suit. But without a binding, contractual exhaustion requirement, it does not matter whether Plaintiff perfected the appeals process or not. At this stage, her procedural misstep, even if true, does not bar her claim.

## C.

The University's contention that Plaintiff's "Complaint fails to put Howard on notice of what she specifically alleges is a breach of contract," Def.'s Mem. at 17, also misses the mark. Plaintiff asserts that she and the University entered into a contract when she accepted her offer of

enrollment.  Compl. ¶ 88.  That contract included the process and procedures governing student disciplinary proceedings, as set forth in the *HCOM Policies and Procedures Manual*. *See, e.g.*, *id.* ¶¶ 33, 38, 43–48.  Plaintiff goes on to identify multiple irregularities in her adjudicative process: (1) she received no "early warning" report, *id.* ¶ 61; (2) she did not receive "evidence of the investigation" against her, *id.* ¶ 44; (3) the person making the allegation of wrongdoing was not disclosed to her, *id.* ¶ 45; (4) she was denied the opportunity to select an advisor or consult with a lawyer, *id.* ¶ 46; (5) the Honor Council Committee hearing was not held in a timely manner, *id.* ¶ 38; and (6) the Honor Council Committee lacked a "quorum of fellow students on the panel," *id.* ¶ 54.  Separately, Plaintiff also alleges that the University's refusal to hear her appeal from the Promotion Committee's dismissal decision failed "to comply with Howard Medical School's usual practices and published policies."  *Id.* ¶ 74.  These allegations plainly put the University on sufficient notice of the grounds for Plaintiff's breach-of-contract claim.

The University's suggestion that Plaintiff's allegations amount to no more than "a few minor procedural defects," and not a material breach, is easily dismissed.  Some of the alleged breaches are plausibly material, including the nondisclosure of evidence prior to the Honor Council Committee hearing, the denial of an advisor or counsel in connection with the hearing, the improper composition of the Honor Council Committee, and the refusal to consider her appeal from the Promotion Committee's dismissal decision.  The University disputes some of the procedural violations alleged, *see* Def.'s Mem. at 21—though not the ones just mentioned—but at this stage, the court must assume Plaintiff's well-pleaded facts to be true.  Plaintiff has made out a breach-of-contract claim against the University.

## IV.

For the foregoing reasons, Defendant's Motion to Dismiss, ECF No. 9, is denied.

Dated:  May 25, 2022

_____
Amit P. Mehta
United States District Court Judge